# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FLOYD LEE MILLER, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 15-CV-700-TCK-FHM |
| | ) |
| CARL BEAR, Warden, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is Petitioner Floyd Lee Miller's habeas corpus petition under 28 U.S.C. § 2254 (Dkt. 2). Petitioner challenges his Ottawa County District Court convictions for manufacturing methamphetamine and resisting arrest, Case No. CF-2011-309. Dkt. 2 at 1. For the reasons below, the Court will deny the petition.

**I. Background**

Petitioner's convictions stem from an incident in 2011, when he was apprehended in Miami, Oklahoma. Dkt. 11-1 at 83. Miami Police Officer Kelly observed Petitioner walking down a street with a backpack at 2:15 a.m. on September 12, 2011. *Id.* Officer Kelly approached Petitioner, who dropped his backpack and identified himself as "Punkin Miller." *Id.* at 86-88. Officer Kelly recognized Petitioner as Floyd Miller and remembered there may be warrants for his arrest. *Id.* at 89. Shortly thereafter, Officer Johnson arrived at the scene, and dispatch confirmed the existence of several outstanding warrants. *Id.* at 91. Officer Johnson tried to handcuff Petitioner, but Petitioner began running. *Id.* at 91. The officers eventually apprehended Petitioner, placed him in a police cruiser, and retrieved his backpack from the street. *Id.* at 91-92. The officers searched the bag and discovered a "shake and bake" bottle used to manufacture methamphetamine. *Id.* at 94-95.

The State charged Petitioner with manufacturing a controlled dangerous substance after a felony in violation of OKLA. STAT. tit. 63, § 2-401(G) (Count I) and resisting arrest in violation of OKLA. STAT. tit. 21, § 268 (Count II). Dkt. 10-3 at 1. On November 20, 2012, a jury convicted Petitioner of all charges. Dkt. 11-2 at 43-44. The State Court sentenced Petitioner to seventeen years imprisonment on the methamphetamine charge, with two years suspended, and one-year imprisonment for resisting arrest. Dkt. 11-3 at 12. The sentences are to run concurrently, with a total term of fifteen years. *Id.*

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). Dkt. 10-1. His appellate counsel raised one proposition of error, arguing the evidence was insufficient to support the methamphetamine conviction. *Id.* at 2. By a Summary Opinion entered April 15, 2014, the OCCA affirmed Petitioner's conviction. Dkt. 10-3.

Thereafter, Petitioner filed an application for post-conviction relief in the State Court. Dkt. 10-4. He argued the arresting officers conducted an illegal search of his backpack, and trial and appellate counsel were ineffective for failing to raise the issue. Dkt. 10-5 at 1. He also argued his conviction should be vacated based on newly discovered evidence of police misconduct. *Id.* The application was denied, and the OCCA affirmed the decision. Dkt. 10-5; *see also* Dkt. 10-7.

Petitioner filed the instant § 2254 Petition (Dkt. 2) through counsel on December 9, 2015. He identifies the following grounds for relief:

(Ground 1): Insufficient evidence.

(Ground 2): Illegal search and seizure, and ineffective assistance of counsel.

(Ground 3): Newly discovered evidence.

Dkt. 2 at 6, 10, 14. Respondent filed a Response (Dkt. 10) along with copies of the state court record (Dkt. 11). Respondent concedes, and the Court finds, that the petition is timely and Petitioner exhausted his state remedies. *See* 28 U.S.C. §§ 2244(d)(1), 2254(b)(1)(A). The matter is therefore ready for a merits review.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[1] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563

---

[1] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

**Ground 1: Sufficiency of the Evidence**

In Ground 1, Petitioner claims he was deprived of due process because the State's evidence is insufficient to support the methamphetamine conviction. Dkt. 2 at 6. He contends his possession of a "shake and bake" bottle does not prove he actually manufactured the drugs. *Id.* Specifically,

4

Petitioner notes fuel is necessary to complete the chemical manufacturing process, and he did not possess fuel at the time of his arrest. *Id.* at 7.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

Petitioner challenges his conviction under OKLA. STAT. tit. 63, § 2-401(G). To obtain this conviction, the State had to prove that Petitioner: (1) knowing and intentionally, (2) manufactured, (3) a controlled dangerous substance (methamphetamine). *See* OKLA. STAT. tit. 63, § 2-401(G);

5

OKLA. UNIF. CRIM. JURY INSTR. No. 6-3. Manufacturing is defined as the "[p]roduction, preparation, propagation, compounding, or processing a controlled dangerous substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis; or a combination of extraction and chemical synthesis." OKLA. UNIF. CRIM. JURY INSTR. No. 6-16.

The OCCA considered the manufacturing statute and found that each element was met. Dkt. 10-3 at 2. After reviewing the trial transcripts and exhibits in the light most favorable to the State, the Court agrees. The shake and bake bottle was discovered in Petitioner's backpack. Dkt. 11-1 94-95. Thereafter, Narcotics Detective Hicks arrived at the scene and determined the bottle exhibited the "tell-tale" signs of a methamphetamine lab. *Id.* at 122. He testified the manufacturing process was likely finished because there was very little fuel left in the bottle. *Id.* at 138-139. According to Detective Hicks, the fuel absorbs into the completed drug during the production process. *Id.* The State's forensic scientist further testified that the bottle contained methamphetamine and ephedrine/pseudoephedrine, a precursor substance. Dkt. 11-2 at 12.

Petitioner does not appear to challenge this evidence. Instead, he takes issue with the jury's inference that he manufactured the methamphetamine in his bottle. Dkt. 2 at 6-7. The Tenth Circuit has held that "the mere existence of an alternative explanation does not" negate a jury's finding. *United States v. Poe*, 556 F.3d 1113, 1126 n.16 (10th Cir. 2009). The "jury has wide latitude to determine factual issues and to draw reasonable inferences from circumstantial evidence." *United States v. Lacy*, 904 F.3d 889, 900 (10th Cir. 2018) (quotations omitted). "An inference is reasonable if it flows from logical and probabilistic reasoning, *i.e.*, with experience serving as the touchstone, … there is a reasonable probability that the conclusion flows from the facts in

evidence." *United States v. Hill*, 786 F.3d 1254, 1261 (10th Cir. 2015). Here, there is a reasonable probability Petitioner made use of the shake and bake bottle found in his backpack, and that he was not carrying someone else's methamphetamine lab. Consequently, the Court cannot disturb the OCCA's ruling, and Ground 1 fails.

**Ground 2: Illegal Search and Seizure and Ineffective Assistance of Counsel**

In Ground 2, Petitioner contends trial and appellate counsel should have raised an illegal search argument. Dkt. 2 at 10-11. According to Petitioner, Officers Kelly and Johnson violated the Fourth Amendment by searching his backpack without a warrant or probable cause. *Id*. Petitioner contends counsel could have succeeded on this argument by demonstrating none of the exceptions to the warrant requirement – including abandonment, inevitable discovery, or officer safety – apply in his case. *Id.*

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend VI. A deprivation of that right occurs where: (1) counsel's performance was deficient, and (2) such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies to trial counsel and appellate counsel. *See Evitt v. Lucey*, 469 U.S. 387, 393-400 (1985); *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges counsel failed to raise a legal issue, the Court must first "examine the merits of the omitted issue." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Id.* (citing *Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998)). If the issue has merit, the Court must then determine whether counsel's failure to raise it "was deficient and prejudicial" under *Strickland*. *Id.*

7

Standing alone, the *Strickland* standard is "highly deferential." *Strickland*, 466 U.S. at 689. Coupled with § 2254(d)(1), this Court's review of the OCCA's ruling is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review … applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."). "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [this Court] defer[s] to the state court's determination that counsel's performance was not deficient and, further, … to the attorney's decision in how to best represent a client." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

Applying *Strickland,* the OCCA found Petitioner received adequate representation because the omitted illegal-search argument is meritless. Dkt. 10-7 at 3-4. The Summary Opinion reasoned "[t]here can be no complaint of illegal search when police officers search without a warrant and seize abandoned property." *Id.* at 3. Alternatively, the OCCA found that even if Petitioner did not run far enough to abandon his backpack, the search "would … fall under the warrantless search exception of being incident to Petitioner's arrest." *Id.* at 4.

Viewing the decision with double deference, the Court agrees. The Fourth Amendment is not implicated when police search property that has been abandoned. *See United States v. Juszczyk*, 844 F.3d 1213, 1213 (10th Cir. 2017). "Abandonment occurs if either (1) the owner subjectively intended to relinquish ownership of the property or (2) the owner lacks an objectively reasonable expectation of privacy in the property." *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018. "The owner's abandonment must be voluntary, and abandonment cannot be voluntary when it results from a violation of the Fourth Amendment." *Id.* (citing *United States v. Ojeda-Ramos*, 455 F.3d 1178, 1187 (10th Cir. 2006)). The critical "question, then, is whether a reasonable officer

8

in [the arresting officer's] position would have believed that [the petitioner] had relinquished any property interests []he possessed in the [bag] based on [his] voluntary words and actions." *Easley*, 911 F.3d at 1083.

Generally, an owner relinquishes his property interests by purposefully leaving an item in a public place. *See, e.g., United States v. Juszczyk*, 844 F.3d 1213, 1214-15 (10th Cir. 2017) (defendant abandoned his backpack by throwing it on a roof); *United States v. Morgan*, 936 F.2d 1561, 1570-71 (10th Cir. 2017) (defendant abandoned his bag by throwing on the porch of a house he did not own). This includes situations where, as here, the owner flees to avoid arrest and leaves the property behind. *See United States v. Quintana-Grijalva,* 332 Fed. App'x 487, 492 (10th Cir. 2009) (Defendant "did not retain a reasonable expectation of privacy in the truck or any of its contents when he fled from the truck"). *Cf United States v. Jones,* 707 F.2d 1169 (10th Cir. 1983) (holding that the police had not violated the defendant's Fourth Amendment rights by searching a satchel he discarded while fleeing from the police). As the Tenth Circuit noted, "[t]he existence of police pursuit or investigation at the time of the abandonment does not of itself render the abandonment involuntary." *Morgan,* 936 F.2d at 1570.

Here, the record reflects Petitioner dropped his backpack on the street while speaking with Officer Kelly, and then fled when Officer Johnson tried to make an arrest. Dkt. 11-1 at 83-92. It is not entirely clear how far Petitioner ran before police apprehended him. However, even if it was a short distance, Petitioner clearly intended to leave the backpack (and the police) behind. The OCCA's ruling on abandonment is therefore reasonable in light of federal precedent, and the Court need not reach the alternative ruling on a search incident to arrest. Counsel provided effective

9

assistance, notwithstanding the failure to raise an illegal search argument, and habeas relief is unavailable with respect to Ground 2.

**Ground 3: Newly Discovered Evidence**

Petitioner finally claims his conviction should be vacated in light of newly discovered evidence. Dkt. 2 at 14. He notes that several years after his trial, six Miami police offers were placed on administrative leave. *Id.* at 15. One officer was indicted on felony charges, although he was not involved in Petitioner's case, and Officer Kelly was terminated. *Id.* Petitioner's trial counsel attempted to discover Officer Kelly's complaint history and service records before trial, but the request was denied. *Id.* at 14-15. Petitioner maintains the new evidence would significantly discredit Officer Kelly's testimony and change the outcome of the trial. *Id.* at 15-16.

The OCCA rejected Ground 3, reasoning that "[a] new trial will not be granted where the evidence merely tends to discredit or impeach a witness without some probability that the trial result would be changed." Dkt. 10-7 at 4. According to the OCCA, Petitioner did not "establish that his alleged newly discovered evidence is sufficiently material to his case; the evidence at best could merely tend to discredit or impeach a witness; and the evidence does not create a reasonable probability that the outcome of his trial should change." *Id.* at 5.

Federal law is fairly similar to Oklahoma law with respect to newly discovered evidence. The failure to disclose impeachment evidence "amounts to a constitutional violation … if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 676 (1985)); *see also Strickler v. Greene*, 527 U.S. 263, 280 (1999). In other words, there must be a reasonable probability that, based on the new information, "the outcome of the proceeding would have been different." *Id.* at 682. New

impeachment evidence qualifies under this test if it may be determinative of the defendant's guilt or innocence. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

Having reviewed the record, the Court declines to grant relief based on new evidence, for two reasons. First, it is unclear why Officer Kelly was terminated and what, if any, misconduct is attributable to him. Second, even assuming Officer Kelly engaged in some misconduct, the Court is not convinced impeachment evidence would have changed the outcome of the proceeding. Officer Kelly was not alone at the scene. Officer Johnson arrived within minutes of the initial contact, and both officers' testimony was virtually the same. Dkt. 11-1 at 86-92; 106-114. Officer Johnson testified that Petitioner had outstanding warrants, he tried to flee during the arrest, and that Officer Johnson discovered a shake and bottle in Petitioner's backpack. *Id.* at 106-114. Narcotics Detective Hicks also arrived at the scene and confirmed the bottle was used to manufacture methamphetamine. *Id.* at 122. In light of this additional, cumulative evidence supporting Petitioner's conviction, the Court finds the OCCA's ruling was objectively reasonable. *See Hanson v. Sherrod*, 797 F.3d 810, 832 (10th Cir. 2015) ("We cannot say it was unreasonable for the OCCA to hold that [the cumulative evidence] would not have changed the outcome of [the petitioner's] trial."). Ground 3 therefore fails.

Based on the foregoing, the Court concludes Petitioner's conviction does not violate federal law. 28 U.S.C. § 2254(a). The Petition must therefore be denied.

## III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. 2) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

**ORDERED this 8th day of February 2019.**

 _____
 **TERENCE C. KERN
 UNITED STATES DISTRICT JUDGE**